CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 26, 2013

LETTER TO COUNSEL:

      RE: *Christina Angela Johnson v. Commissioner, Social Security Administration*;
           Civil No. SAG-12-3804

Dear Counsel:

On December 28, 2012, the Plaintiff, Christina Angela Johnson, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and the plaintiff's response. (ECF Nos. 14, 22, 23). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Ms. Johnson filed her claim for benefits on May 31, 2011, alleging disability beginning on January 1, 2010. (Tr. 22). Her claim was denied initially on September 20, 2011, and on reconsideration in November, 2011. (Tr. 124-28, 130-33). A hearing was held on June 5, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 38-79). Following the hearing, on July 27, 2012, the ALJ determined that Ms. Johnson was not disabled during the relevant time frame. (Tr. 19-37). The Appeals Council denied Ms. Johnson's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Johnson suffered from the severe impairments of asthma, obesity, bipolar disorder, and anxiety disorder. (Tr. 24). Despite these impairments, the ALJ determined that Ms. Johnson retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she must avoid concentrated exposure to respiratory irritants. She can carry out simple tasks in 2 hour increments (which can be accompanied by regularly scheduled breaks); have occasional interaction with coworkers and supervisors but must avoid direct[] interaction with the general public; and adapt to simple changes in a routine setting.

(Tr. 27). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Johnson could perform both her past relevant work as a warehouse picker and house cleaner and other jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 30-32).

Ms. Johnson presents two primary arguments on appeal: (1) that the ALJ erred in failing to properly consider all of her impairments at Step Two; and (2) that the ALJ assigned inadequate weight to the opinions of two treating sources. Each argument lacks merit.

First, Ms. Johnson challenges the ALJ's determination that her back and neck pain were not severe, and argues that the ALJ should have assessed whether fibromyalgia is a severe impairment. Pl. Mot. 8. First, with respect to fibromyalgia, the diagnosis appears in a single note from Dr. Linda Freilich on May 8, 2012. (Tr. 413). The notes from that appointment with Dr. Freilich do not indicate the reasons for the new fibromyalgia diagnosis, and do not indicate that Ms. Johnson was suffering any additional functional limitations. *Id.* In fact, the notes reflect only that she is "still having neck and back pain." *Id.* The mere diagnosis of fibromyalgia does not render it a severe impairment, in the absence of any indication that the fibromyalgia limits Ms. Johnson's ability to perform work.[1]

Turning to neck and back pain, the ALJ expressly addressed "the claimant's alleged arthritis in neck" during her Step Two analysis. (Tr. 25). The ALJ noted that despite Ms. Johnson's complaints of neck pain beginning in September, 2011, objective testing such as an X-ray and CT scan had not revealed evidence of injury. *Id.* The ALJ therefore found the "alleged arthritis in neck" to be a "non-medically determinable impairment." *Id.* Although there is evidence in the record both substantiating the back and neck pain and corroborating the ALJ's assessment,[2] I am not permitted to reweigh the evidence so long as the ALJ has supported her analysis with substantial evidence, as she has here. Moreover, even if I were to agree that the ALJ erred in her evaluation of Ms. Johnson's neck and back pain at Step Two, such error would be harmless. Ms. Johnson made the threshold showing of other severe impairments, and the ALJ correctly continued the sequential evaluation and considered the combined impact of her

---

[1] Moreover, SSR 12-2p provides agency guidance on the evaluation of fibromyalgia and forbids reliance upon a "physician's diagnosis alone." SSR 12-2p, 2012 WL 3104869 (July 25, 2012). It directs ALJs to evaluate a purported fibromyalgia diagnosis on the basis of tender points criteria, or, alternatively, on the basis of the 2010 American College of Rheumatology Preliminary Diagnostic Criteria, which require, *inter alia,* a history of widespread pain in all quadrants of the body; "[r]epeated manifestations of six or more [fibromyalgia] symptoms . . . especially fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome;" and evidence that other potential disorders have been excluded. There is no indication in Dr. Freilich's notes, or elsewhere in the medical record, that Ms. Johnson underwent diagnostic testing such as the tender points test or tests to rule out other disorders, or displayed such a breadth of concurrent symptoms.

[2] For example, while there are several reports addressing Ms. Johnson's neck pain, there are also reports from late 2011 and early 2012 suggesting that Ms. Johnson was not suffering neck pain and had normal motion in her neck. (Tr. 380, 385).

impairments, both severe and non-severe, on her ability to work. *See* 20 C.F.R. § 404.1523; (Tr. 28) (acknowledging, as part of the RFC analysis, Ms. Johnson's continued reports of neck pain and muscle spasms, but noting normal objective testing and the failure to pursue recommended evaluation with a rheumatologist). Therefore, remand is not required to address the ALJ's Step Two findings.

Ms. Johnson also contests the assignments of weight to two of her treating sources, Dr. Quintero-Howard and a licensed clinical professional counselor (LCPC), Taryn Grey. Pl. Mot. 11-14. Dr. Quintero-Howard served as Ms. Johnson's treating psychiatrist. Despite her mental health specialty, her opinion included extreme physical restrictions regarding Ms. Johnson's ability to sit, stand and walk, and lift and carry that were not corroborated by treatment notes from Ms. Johnson's physical doctors. (Tr. 371). A treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In fact, if a doctor's own notes provide insufficient or contradictory support for the doctor's conclusions, an ALJ may properly assign less than controlling weight. *See Forsyth v. Astrue,* No. CBD-09-2776, 2011 WL 691581, at *4 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the physician's conclusions were inconsistent with his own medical records); *Cramer v. Astrue,* No. 9:10–1872–SB–BM, 2011 WL 4055406, at *9 (D.S.C. Sept. 12, 2011) (upholding assignment of less than controlling weight to opinions "that were based in large part on the plaintiff's self-reported symptoms rather than clinical evidence and that were not consistent with the doctor's own treatment notes"); *see generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The ALJ noted that in May, 2011, Dr. Quintero-Howard assigned Ms. Johnson a GAF score of 55, which reflects only moderate functional limitations, and noted Ms. Johnson's report that she was "doing good" on medication. (Tr. 29-30, 443, 448). However, Dr. Quintero-Howard opined that Ms. Johnson had extreme limitations of social functioning. (Tr. 30, 372). In light of the inconsistencies with Dr. Quintero-Howard's own treatment notes and with the medical records from other sources, the ALJ's assignment of "little weight" to Dr. Quintero-Howard's opinion is supported by substantial evidence.

In addition, while the ALJ made an inconsistent statement about whether the opinion of Ms. Grey, the LCPC, was entitled to any weight, the ALJ correctly noted that Ms. Grey is not an acceptable medical source, pursuant to 20 C.F.R §§ 404.1513(a), (d) and 416.913(a), (d). *Id.* As a result, her opinion was not entitled to controlling weight. The ALJ in fact assigned Ms. Grey's opinion "little weight because it is not supported by the record evidence as a whole as discussed herein." (Tr. 30). Specifically, the ALJ noted that Ms. Grey had treated Ms. Johnson for a relatively short time, and assessed a lower GAF score than Dr. Quintero-Howard, who treated Ms. Johnson for a longer period and is an accepted medical source. *Id.*

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 14) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 22) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

        Sincerely yours,

        /s/

        Stephanie A. Gallagher
        United States Magistrate Judge